**In re Terry R. MORRISON Sarah J. Morrison, Debtors.**

**Terry R. Morrison, Plaintiff,**

v.

**Fleetwood Homes Of Georgia, Defendant.**

**Bankruptcy No. 97–50713–JDW, Adversary No. 99–5025–JDW.**

United States Bankruptcy Court, S.D. Georgia, Waycross Division.

May 1, 2000.

458

Clyde W. Royals, Douglas, GA, for Plaintiff.

David A. Garland, Albany, GA, for Defendant.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion for Summary Judgment filed by Terry R. Morrison ("Plaintiff"), a co-debt-or in this case, seeking judgment as a matter of law on issues raised in his complaint against his employer, Fleetwood Homes of Georgia ("Defendant") for turnover of property and for violation of the automatic stay. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A) and (E). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Plaintiff filed for relief under Chapter 13 on June 30, 1997, and his Chapter 13 plan was confirmed on November 19, 1997. On July 9, 1997, pursuant to 11 U.S.C. § 1325(c), the Court entered an Order Upon Employer Directing Deductions from Income and Remittance of Deductions to Trustee (the "Order"). Defendant has made the ordered deductions from Plaintiff's wages and remitted them to the Chapter 13 trustee. However, on July 14, 1997, Defendant also deducted a one-time fee of $25.00 from Plaintiff's wages and began deducting a fee of $3.00 to $5.00 per pay-check. Defendant alleges that all amounts deducted before confirmation have been returned to Plaintiff, and that all deductions from Plaintiff's wages have been made from Plaintiff's post-confirmation earnings. Defendant makes these deductions in order to transfer the cost of administering the Order from itself to Plaintiff.

 The Order did not authorize Defendant to deduct its administrative costs from Plaintiff's wages, and Defendant has produced no evidence of such authorization granted it by statute, contract,[1] or other

---

1. If Plaintiff had agreed to reimburse Defendant for expenses of this sort as a condition of his employment, the obligation would be subject to the automatic stay because, even though it matured after Plaintiff petitioned for relief, the obligation itself was incurred prior to the commencement of the case. *See* 3

KING, COLLIER ON BANKRUPTCY ¶ 362.03[3][a], p. 362–16 (Dec.1999). Furthermore, if such agreement were characterized as an executory contract, it would be void because Section 525(b) has no provision for bypassing its effect through private agreement between employer and employee. *See*

source of law. Defendant has complied with the Order, has filed no motion to quash the Order, and has not petitioned the Court in any other manner for relief from any economic burden it may have incurred in complying with the Order.

Plaintiff filed the complaint initiating this action on September 1, 1999, seeking turnover of the amounts deducted, and seeking to hold Defendant in contempt for violating the automatic stay. Plaintiff also seeks certification of this case as a class action. Calculated pursuant Bankruptcy Rule 9006(a), the ninety day period subsequent to Plaintiff's complaint expired on November 30, 1999. Plaintiff served his first interrogatories on Defendant on November 8, 1999. Calculated pursuant to Bankruptcy Rule 9006(a), the thirty day period subsequent to service of Plaintiff's first interrogatories expired on December 8, 1999. On January 19, 2000, Plaintiff filed this Motion for Summary Judgment, a Motion to Add Party or Parties, a Motion for Additional Time to File Motion to Certify as Class Action, and a Motion to Certify as a Class Action. Calculated pursuant to Bankruptcy Rule 9006(a), these motions were filed 140 days after Plaintiff filed his complaint.

### Conclusions of Law

All matters addressed in this Memorandum Opinion were discussed in the hearing held on February 23, 2000. Accordingly, the Court will rule on Plaintiff's class certification motions, and his motion for additional parties, as well as Plaintiff's pending summary judgment motion.

### I. Defendant lacked authorization to deduct administrative fee from Plaintiff's wages

■ The Court does not agree with the argument that this case turns on whether property of the Chapter 13 estate includes the portion of Plaintiff's wages not paid to the trustee.[2] Rather, this case raises the more fundamental issue of Defendant's duty to comply with the orders of this Court. The standard form of income deduction order used in the Southern District of Georgia was issued in this case. The order provides, "FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN FINES OR OTHER SANCTIONS AGAINST YOU." Similarly, the standard form used in the Middle District of Georgia commands, "FAIL NOT UNDER PENALTY AS PROVIDED FOR BY THE ACT OF CONGRESS RELATING TO BANKRUPTCY."

Given the wording of the income deduction order, it should have been clear to Defendant that non-compliance would subject Defendant to this Court's contempt power. Defendant was not invited to cooperate as a gesture of goodwill towards the Court, nor to condition its compliance on Debtor reimbursing it for any expenses it might incur in complying. While the income deduction order is unambiguous, the Court emphasizes that Defendant *must* comply with the Order entered upon it on July 9, 1997 without regard to any reimbursement for administrative costs to which it may believe it is entitled, and, if it fails to do so, Defendant will be subject to sanctions in this Court.

In this case, Defendant is complying with the Order in deducting the specified

11 U.S.C. § 525(b); 4 KING, COLLIER ON BANKRUPTCY ¶ 525.04, pp. 525–19 to 525–21.

2. The Court acknowledges and understands the arguments raised by Defendant in reliance on *In re McKnight,* 136 B.R. 891 (Bankr. S.D.Ga.1992). This point of view proposes to confine the Court's post-petition authority to that portion of Debtor's earnings required to fund the plan. Such reliance on *McKnight* is

misplaced, however. The McKnight court resolved a dispute between the debtor and a post-petition creditor. Arguments extending that discussion to other entities without a corresponding factual analogy are ill advised. There is an important factual distinction between this Court's interest in compliance with its orders and the interest of a creditor in the enforcement of a post-petition debt obligation.

amount from Plaintiff's wages and in remitting such amount to the Chapter 13 trustee. The problem in this case is created, not by Defendant's failure to comply, but by Defendant's transfer of its expense of compliance to Plaintiff.

 The Eleventh Circuit regards it as "well settled that '[e]ach party to a court order is responsible for ensuring its own compliance with that order and shouldering the cost of compliance.'" *In re Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1557 (11th Cir.1996) (quoting *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir.1986)). Defendant is thus responsible for bearing any economic burden it might incur as a result of its compliance with the Order.

The Court might decide to relieve a party of the responsibility of bearing the cost of complying with an order, and Defendant could have employed timely process to request such consideration in this case. However, no such request was made, and accordingly, no such consideration will be afforded. Nevertheless, the Order was issued in response to the economic distress of Defendant's employee, and not as a result of any fault of Defendant. The Court will thus draw a distinction between Defendant and the parties in *In re Jove* and *Sizzler* that neglected their duties, requiring others to shoulder the burden of ensuring their compliance with court orders.

In *In re Jove*, the Eleventh Circuit dealt with a creditor whose violations of the automatic stay occurred with a frequency sufficient to prompt the characterization of its repeated violations as "'arrogant defiance of the majesty of the Federal Law[.]'" *In re Jove*, 92 F.3d at 1556–57 (quoting *In re Flynn*, 169 B.R. 1007, 1024 (Bankr.S.D.Ga.1994)). Similarly, in *Sizzler*, a party to a district court judgment failed to comply with the requirements of the court's order, either because of its incompetence or its unwillingness to comply, requiring its opponent to undertake an expensive investigation in order to ensure compliance. *Sizzler*, 793 F.2d at 1533–35.

In both *In re Jove* and *Sizzler*, the non-complying parties shifted their cost of compliance onto another party without ever having actually incurred costs themselves. In this case, however, Defendant has complied with the Court's order, and in doing so, might have incurred actual costs had it not preemptively transferred them to Plaintiff.

Defendant says its position is analogous to an employer subject to a wage garnishment action successfully prosecuted by a creditor of its employee. An income deduction order entered pursuant to Section 1325(c) is not a garnishment of a debtor's wages because it and garnishment under state law are two very distinct legal devices designed to achieve different objectives in different situations. *See In re Hudson*, 216 B.R. 244, 247–48 (Bankr. W.D.Tenn.1997); *United States v. Santoro*, 208 B.R. 645, 649–50 (E.D.Va.1997).[3] The analogy can be drawn, however, at least insofar as an employer is concerned. Though not a garnishee, an employer subject to a Chapter 13 income deduction order must obey an order to which it became a party through no culpability of its own; it may incur expenses as a result of such compliance; and, like the garnishee, an employer subject to a Chapter 13 income deduction order typically has no interest in the affairs of the debtor, or the Chapter 13 proceedings to which the income deduction order is attendant. The

---

**3.** A Chapter 13 income deduction order: (1) is entered at the request of a debtor who is voluntarily under the protection of Chapter 13, while a garnishment is initiated by a creditor without regard to the debtor's consent; (2) is entered to enable overall reorganization of debt structure, while a garnishment is entered relative to a specific debt; and (3) is based on the Chapter 13 confirmation requirements that include the element of "plan feasibility," while the amount of a garnishment is based on a statutory formula that leaves no choice as to method or amount. *See In re Hudson*, 216 B.R. at 247.

employer's only interest is in fulfilling its own duty of compliance.

Recognizing the position of garnishees, legislatures have enacted statutes relieving garnishees of the costs they incur as a result of the garnishment order. For example, the statute subjecting federal employees to state garnishment proceedings also allows federal agencies to add their "administrative costs in executing a garnishment action ... to the garnishment, and ... [to] retain costs recovered as an offsetting amount." 5 U.S.C. § 5520a(j)(2) (1999). The State of Georgia also allows garnishees to recover their "actual reasonable expenses, including attorney's fees, in making a true answer of garnishment." O.C.G.A. § 18-4-97(a) (1999).

It would thus be consistent if the Bankruptcy Code allowed employers subject to income deduction orders, who stand in a position analogous to that of garnishees under state law, to obtain relief from the economic burden of compliance with the income deduction order. Arguably, the Bankruptcy Code does so in Section 503(b)(1)(A), pursuant to which Defendant could have filed an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). Also, Defendant could have filed a motion to quash the Order subject to its right to recover the cost of compliance. Defendant may not, however, transfer the responsibility of bearing the economic burden of its compliance to another party without authorization, and Defendant has initiated no proceedings in this case to obtain such authorization.

■ Defendant also raises the issue of due process, arguing that because it received no notice of the motion requesting the Order, it was unable to protect any interest that it might have had for the cost it might have incurred in complying with the Order. For these reasons and based on the authority stated *supra*, Defendant has no such interest because it is responsible for bearing the economic burden of compliance with the Order. Nevertheless, the Court's broad equitable powers do not relieve it of its obligation to respect the fundamental precepts of due process. *See In re Ropt Ltd. Partnership*, 209 B.R. 144, 150 (1st Cir. BAP 1997). Due process has not been violated in this case, however, nor has it been violated in other cases in which bankruptcy courts have entered income deduction orders upon the employers of Chapter 13 debtors. In *Mullane v. Cent. Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court stated

> that at a minimum[,] [due process] require[s] that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing *appropriate to the nature of the case* .... An elementary and fundamental requirement of due process in any *proceeding which is to be accorded finality* is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane*, 339 U.S. at 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (emphasis added).

The Order was entered upon Defendant in the context of a case under Chapter 13 of the Bankruptcy Code. The issues in the Chapter 13 case were finalized by confirmation of Plaintiff's plan, at least insofar as it concerned any claim Defendant might have had for its cost of compliance with the Order. *See* 11 U.S.C. § 1327(a). When Defendant began deducting its cost of compliance from Plaintiff's wages on July 14, 1997, it had notice that it might incur costs as a result of Plaintiff's plan to reorganize his financial affairs under Chapter 13. Subsequent to such notice, four months transpired before Plaintiff's plan was confirmed on November 19, 1997. During those four months, Defendant had ample time and opportunity either to file an administrative expense claim, to move the Court to quash the Order subject to its being allowed to recover its cost of compli-

ance with the Order from Plaintiff, or to otherwise inform the Court that it wanted relief from the economic burden of compliance with the Order. However, rather than requesting to be heard following service of the order, Defendant elected, without authorization, to charge the cost of compliance to Plaintiff. Accordingly, Defendant will not be heard now to protest that it was deprived of its right to due process of law.

## II. *Matters Concerning Class Action Certification and Addition of Party or Parties*

Plaintiff's Motion for Additional Time to File Motion to Certify as Class Action, Motion to Certify as a Class Action, and Motion to Add Party or Parties will be denied for the reasons stated below.

### A. *Plaintiff Has Not Shown Excusable Neglect as Reason for Untimeliness of Filing Motion for Extension of Time and Motion for Class Certification*

■ Plaintiff's Motion for Additional Time to File Motion to Certify as Class Action and his Motion to Certify as a Class Action are untimely, and he has not shown that excusable neglect caused his delay. Pursuant to Bankruptcy Rule 7023, Federal Rule of Civil Procedure 23 governs class proceedings in bankruptcy cases. In relevant part, Rule 23 states, "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." FED.R.CIV.P. 23(c)(1). Furthermore, so that such determination may be made "as soon as practicable," the Local Rules of the United States District Court for the Southern District of Georgia require that

> [w]ithin 90 days after the filing of a complaint in a class action, unless this period is extended on motion and for good cause shown, the plaintiff shall move for certification of the class action

under subdivision (c)(1) of Rule 23 of the Federal Rules of Civil Procedure.

S.D. GA. L.R. 23.2.

Plaintiff did not move for class certification within the requisite ninety days; he waited fifty days past his filing deadline. If Plaintiff could not obtain evidence necessary for class certification within the ninety-day period, he could have moved for its "enlargement" pursuant to Bankruptcy Rule 9006(b)(1). However, he should have made such motion within the ninety-day period itself. Bankruptcy Rule 9006(b)(1) states, "[W]hen an act is required or allowed to be done at or within a specified period ..., the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged *if the request therefor is made before the expiration of the period originally prescribed* [.]" FED.R.BANKR.P. 9006(b)(1) (emphasis added). Plaintiff's motion for additional time is thus untimely because, as with his motion for class certification, he filed it fifty days late.

The Court might also grant Plaintiff additional time if he could show that excusable neglect caused his delay. In relevant part, Bankruptcy Rule 9006(b)(1) states, "[T]he court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." FED.R.BANKR.P. 9006(b)(1). However, Plaintiff has not shown that his failure to make timely motions results from excusable neglect.

In *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court held that questions of excusable neglect entail an equitable inquiry that takes into account "all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. The Court enumerated factors for deter-

mining excusable neglect,[4] but noted that though courts may excuse delays even when movants are at fault, courts typically do not excuse delays caused by movants' ignorance of, or misunderstanding of, the rules. *Id.* at 392, 113 S.Ct. at 1496; *see also Advanced Estimating Sys., Inc. v. Riney,* 130 F.3d 996, 998 (11th Cir.1997).

■ In the Eleventh Circuit, "it [has been] established ... that attorney error based on a misunderstanding of the law [is] an insufficient basis for excusing a failure to comply with a deadline." *Riney,* 130 F.3d at 998. Movants' delays may be excused if they are attributable to miscommunication, clerical error, or similar problems caused by innocent oversight that should not occur, but which occur nevertheless. *See Walter v. Blue Cross & Blue Shield United of Wisconsin,* 181 F.3d 1198, 1202 (11th Cir.1999). However, movants' neglect will not be excused when it results from movants' failure to understand the requirements of the rules. *Riney,* 130 F.3d at 999.

In his Motion for Additional Time, Plaintiff alleges that "[D]efendant has failed to provide [P]laintiff with sufficient discovery to determine if a class action lies in this matter." (Pl.'s Mot. Add. Time, at ¶ 2.) This allegation does not excuse Plaintiff's delay. Lack of discovery may have prevented Plaintiff from filing a timely motion for class certification, but it did not prevent him from knowing that under the Bankruptcy Rules, the Rules of Civil Procedure, and the Local Rules of this Court, he had ninety days from September 1, 1999 to file his class certification motion, or to file a motion to enlarge the allowed ninety-day period.

Plaintiff has not alleged that his delay was caused by circumstances other than an apparent mistake of law. Accordingly, the Court will deny both Plaintiff's Motion for Additional Time to File Motion to Certify as Class Action, and his Motion to Certify as a Class Action.

**B.** *Motion to Add Party or Parties Lacks Necessary Information or is Filed Inappropriately*

■ In his Motion to Add Party or Parties, Plaintiff asks to be allowed to join "all parties to this action that may fall under the jurisdiction of this court that currently deduct administrative expenses for deduction for chapter 13 salary deduction orders." (Pl.'s Mot. Add Parties, at ¶ 4.) Plaintiff's language seems to request the joinder of all employers, whether related or unrelated to Defendant, who deduct their cost of compliance with Chapter 13 income deduction orders from the wages and salaries of their employees for whose benefit such orders have been entered. Insofar as Plaintiff's motion is an attempt to join parties necessary for just adjudication of this matter, the criteria of Rule 19 have not been met. The parties' allegations indicate that no person is necessary, other than Plaintiff and Defendant, to afford Plaintiff the relief he seeks, *see* FED. R.CIV.P. 19(a)(1), no person is so situated that affording Plaintiff relief will impede such person's ability to obtain similar relief from Defendant or from employers engaged in actions like Defendant's, *see* FED.R.CIV.P. 19(a)(2)(i), and no person is so situated that affording Plaintiff relief will leave Defendant subject to redundant obligations, *see* FED.R.CIV.P. 19(a)(2)(ii).

It seems, however, that Plaintiff may not have filed this motion pursuant to Rule 19. This motion may be an attempt on Plaintiff's part to outmaneuver Defendant's alleged discovery abuses. In his Motion to Certify as Class Action, Plaintiff estimates that the class of "all employees of [Defen-

---

**4.** These factors include (1) the danger of prejudice to the nonmovant, (2) the length of delay and its impact on the efficient administration of judicial proceedings, (3) the reason for delay, including whether it reasonably within the movant's control, and (4) whether the movant acted in good faith. See Pioneer, 507 U.S. at 395, 113 S.Ct. at 1498; *Walter v. Blue Cross & Blue Shield United of Wisconsin,* 181 F.3d 1198, 1201 (11th Cir.1999); *Advanced Estimating Sys., Inc. v. Riney,* 130 F.3d 996, 997–98 (11th Cir.1997).

dant] who have had deductions made from their salaries while in chapter 13 [numbers around] 5000." (Pl.'s Mot. Certify Class Action, at ¶ 2.) Plaintiff's estimate is based upon his "belief that [Defendant] owns and operates mobile home plants throughout the United States and all of these plants presumably deduct administrative expenses when honoring salary deduction orders from the various bankruptcy courts." (*Id.*) Plaintiff alleges that Defendant "has not responded to discovery requests [and that] it appears from speaking with [D]efendant's representative that [D]efendant is going to claim that it owns only two or three mobile home plants that may fall under the jurisdiction of this [C]ourt." (*Id.* at ¶ 3.) Plaintiff further states that he believes that Defendant "is not planning to cooperate in this case." (*Id.*)

It seems probable that Plaintiff believes he has been unable to conduct a sufficient investigation into Defendant's corporate structure because Defendant has engaged in abuses of the discovery process. Defendant alleges, however, that it has complied with the requirements of the Rules and the Scheduling Order governing discovery. (*See* Def.'s Am. Obj. Mot. Add Party, at ¶ 7.) Furthermore, Defendant argues that Plaintiff's investigation was impeded by Plaintiff's own lack of diligence. (See Def.'s Am. Obj. Mot. Add. Time, at ¶ 4.)

Regardless of where fault may lie, it seems apparent that Plaintiff and Defendant have unresolved discovery controversies. However, if Plaintiff's motion is an attempt to resolve such controversies, it is inappropriate. The Scheduling Order specifically states,

> The Court will entertain motions with regard to [failed attempts to resolve discovery controversies without the Court's intervention] only if counsel are unable to reach an accord after sincere attempts to resolve differences. Any motion filed shall include certification that

such attempts have been made. Unless otherwise ordered by the Court, motions to compel discovery may not be filed after the close of discovery.

(Sched. Order, at ¶ 1(b), p. 1.) Plaintiff had ample time, prior to moving for class action certification and summary judgment, to move the Court to compel discovery. Such time has now passed. (*See id.*)

### Conclusion

As a party to an order of this Court, Defendant has the burden of bearing its own cost of compliance. It may not transfer that burden to another party without authorization from this court, and it has made no attempt to obtain such authorization. Furthermore, Defendant was afforded due process because service upon Defendant of the income deduction order served as notice reasonably calculated to apprise Defendant that it was subject to incurring costs as a result of Plaintiff's reorganization under Chapter 13. Defendant had opportunity to be heard before Plaintiff's plan became final upon confirmation, but, rather than taking advantage of its opportunity to request a hearing, Defendant began deducting its cost of compliance from Plaintiff's wages. Such deductions must cease, and Defendant must remit to Plaintiff all amounts so deducted. Plaintiff's motions relating to class action certification must be denied as untimely. Finally, if Defendant's motion to add parties is made pursuant to Rule 19, it fails to meet the criteria of that rule, and if the motion is made to remedy unresolved discovery controversies, the motion is inappropriate.